## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff is the owner of that unique real property located at 8485 Miguel Vista Place, San Diego, California   He exercises his ownership rights and responsibilities with regards to the PROPERTY including making home improvements,  paying property utilities, and paying the property expenses.  As a proud homeowner, he is concerned about his financial matters and diligently takes care of his property.

On or about April 22, 2008 he was alarmed to get legal notice communications that a trustee sale was published for April 22, 2008.   The troubled borrower attempted to communicate with defendants to resolve the alleged debt dispute the property was not sold in April and was set for sale on June 23, 2008.  Currently the property is set for a  wrongful foreclosure sale on Wednesday,  July 23 2008.

Plaintiff seeks to resolve the matter of title to the property and to audit an accounting of an alleged unpaid promissory note.  Recently, he became aware of the pending foreclosure sale and actively attempted to obtain information so as to determine whether the sale was lawful  He claims all the rights and protections under federal and state laws prohibiting wrongful predatory acts and statutory violations. .

No one would speak with him or return his communications about the tender he sought to submit after no audit accounting of his payments, interests, and loan status. He is forced to bring the within ex parte emergency request for an injunction to protect his property interests and preserve the status quo until the court makes a determination of his rights while this matter is being resolved.

2.

### THERE IS A HIGH PROBABILITY OF SUCCESS BASED ON STATUTORY PROTECTION OF CONSUMER RIGHTS IN THE REAL ESTATE INDUSTRY.

Underlying issues of alleged wrongful foreclosure are troubling to the homeowner consumer. Plaintiff relies on the separate sections of the United States Code and state law regarding Fair Debt Collection Practices Act. 12 USCA § 2605 (b). THE REAL ESTATE SETTLEMENT PROCEDURES ACT.

In this case it is not known if or who has any significant or sufficient rights to initiate a non-judicial foreclosure. <u>Nor has there been any validation of the debt</u> In fact there has been no audit or accounting of any tender offer, payments, fees, and charges made to his loan account. One of the purposes of the Real Estate Settlement Procedures Act was to protect borrowers and give them a tool by which they could protect themselves beyond simply TILA requirements to halt fraud and misrepresentation in the mortgage industry and to halt preying on consumers. This is so serious an issue that there is a clear mandate to maintain the "status quo" pending a full adjudication.

3.

## PRELIMINARY ISSUES OF STANDING TO EXECUTE A FORECLOSURE SALE WERE NEVER DETERMINED AND CONSTITUTE A FRAUD ON THE COURT.

The real estate industry is rampant with investigations for fraud and secret obscene profits from preying on consumers. The real estate market controls the consumer with the threat of foreclosure.

<u>Standing</u>. There has been no determination of standing to execute a foreclosure sale. A holder in due course must produce the original contract and the original unaltered promissory note entitling them to proceed against the title and possession.

**ISSUE: FRAUD ON THE COURT.** Foreclosures take place in courts of equity. Under the rules of evidence this court has the responsibility to keep the status quo until it is determined there is no fraud on the court. If CITI is not the holder in due course ("HIDC"), the court is being told that they have a right to foreclosure when they do not. The only one with foreclosure rights is the HIDC. To be the HIDC you must have the

Mamerto - Ex Parte Application - 5

original wet ink signature note. All others are Holder for Value ("HFV") and have very limited rights.

The court must not determine or confirm a foreclosure sale if:

(1) Title is misrepresented and/or there is no commercial sale;

(2) The original, unaltered note is not produced;

(3) There is a holder in due course, not simply a holder for value; and/or

(4) There is illegal securitization; and

(5) The contract terms were unconscionable and/or statutory violations are determined by wrongful foreclosure sale which is set to be conducted fraudulently, or justice otherwise was not done.

The actions of defendants are little short of incredible as the borrower was not able to work out troubled loans or ascertain who actually holds his original wet ink signature note and loan contract. . In addition, defendants proceeded without notice with deceptive conduct, collusion and refusal to respond to inquiries from him. There is nothing to actually validate the loan. As a consequence of this continuing wrongful conduct, plaintiff asserts fraud related causes of action against the defendants

**ISSUE: FRAUD ON THE CONSUMER**. The borrower initially is required to sign prepared form documents without making any changes which are tantamount to unilateral contracts. A quick signing of multiple complex document packages which he had to sign with no understanding of the complex terms and incomplete disclosures on its face or in application. The homeowner is an innocent novice challenged by his lack of experience and/or barriers of language, age, and/or other understanding difficulties.

**FRAUDULENT PREDATORY LENDER PRACTICES**. The borrower is very Disadvantaged in the switch and bait lender tactics and intimidating sale procedure and has no understanding of how the mortgage market works in loan servicing and who really owns his note. As a result, there are multiple occurrences of statutory violations,

the overwhelming extent of which is unknown. He seeks a court determination and protection of rights under state and federal laws governing real estate transactions.

The prohibitions of "unfair" and "deceptive" practices are distinct. <u>Elder v.Coronet Ins. Co.</u> 201 Ill. App.3d 733. (1st Dist, 1990). Both federal and state law consider (1) whether the practice offends public policy(without necessarily having been previously considered unlawful); (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers.

Mortgage practices have been challenged under consumer fraud act. Here the disputed issues regarding the PROPERTY in the possession and ownership of plaintiff require a determination by the Court. The Court must grant the ex parte application for injunctive relief while the determination of the title dispute is resolved. The Court must grant emergency injunctive relief to halt a change in the status quo.

The obvious harm of displacing a homeowner is material to the existence of a cause of action for declaratory relief. There is a need for an injunctive relief to maintain the status quo while this matter is determined by the Court.

4.

**THE DETERMINATION OF HOLDER IN DUE COURSE AND ACCOUNTING IS TANTAMOUNT ISSUE REQUIRED TO QUIET TITLE DISPUTES AND COMPELS THE ISSUANCE OF THE REQUESTED INJUNCTIVE RELIEF.**

The compelling need to quiet title disputes provides a separate basis for her claims and for her requested emergency preliminary injunction. Based <u>solely</u> on the need to quiet title and the relevant, egregious facts as set forth in pleadings and plaintiff's declaration, he is more than likely to succeed on the merits of his claims in particular due to succeed on the merits of his claims in particular due to the failure to respond to his inquiries to establish debt verification, obtain an audit accounting, credit her tender and payments, and determine the holder in due course of the original contract and wet signature original promissory note.

Unquestionably, undisclosed information constitutes the "actual or threatened misappropriation" of the PROPERTY that may be enjoined. There is no proof of the identity of the holder in due course who is entitled to proceed in a foreclosure sale.

5.

### IT IS VERY LIKELY THAT PLAINTIFF WILL SUCCEED ON THE MERITS OF HIS CLAIMS AGAINST ALL OTHER PARTIES.

The court must note that where there are "serious questions" that involve a fair chance of success on the merits that cannot be resolved by the one or the other at the hearing on the injunction "and they as to which the court perceives the need to preserve the status quo lest one side prevent resolution of the question or execution of any judgment by altering the status quo". *Republic of the Philippines v. Marcos*, 862 F.2nd 1355, 1362 (9th Cir.1988).

California courts consider two (2) interrelated factors in deciding whether to issue a preliminary injunction: (1) likelihood of success on the merits; and (2) interim harm, Hilb, Rogal & Hamilton Ins. Servs. v. Robb, 33 CA4th 1812, 1819 (1995). The issuance of an injunction should not be adverse to the public interest. The degree of irreparable harm decrease as the probability of success decreases. Roe v. Anderson 13 F.3d 1400, 1402 (CA9 1998).

**INITIAL REQUIREMENTS OF TRO.** The initial requirement for the issuance of a TRO is that the moving party must demonstrate what the courts have always labeled the fundamental requirements that there is irreparable injury and the inadequacy of legal remedy. See Weinberger v Romero-Barcedo 456 US 305, 312, 102 S.Ct 1978 (1982). The general rule is that a Temporary Restraining Order or a preliminary injunction is for the purpose of preserving the status quo, that is the condition at the time of filing, until there can be an adjudication on the merits.

Irreparable Injury. The real property being wrongfully foreclosed on July 23, 2008 is the plaintiff's home. Real property is unique and something for which no amount

of monetary damages will compensate. This is especially true of an citizen losing his home.

<u>Harm is imminent.   Plaintiff is threatened with the immediate loss of possession of his property by wrongful foreclosure.</u>

<u>Inadequacy of Remedy</u>. A home is an important investment where one choses to make his life, to build a future, and is not replaceable.  Plaintiff will suffer <u>irreparable harm</u> in the loss of his home and cannot be compensated for that loss. That substantial threat of irreparable harm outweighs any potential harm to the other parties.

6.

## THE REQUESTED INJUNCTIVE RELIEF IS CRITICAL AND NECESSARY TO AVOID FURTHER SUBSTANTIAL IRREPARABLE HARM

The injunctive relief requested herein specifically that defendants be enjoined from directly or indirectly contacting any agents to oust him from the possession and title to his PROPERTY. Although the law protects mortgage industry parties' right to engage in any lawful trade or business, and although mortgage industry parties were previously within its rights to act on its contractual rights, the court is forced to maintain the status quo in the instant case. Plaintiff has demonstrated a likelihood of success on the merits and the balance of hardships tips sharply in his favor because of the confusion that the defendants created in avoiding his inquiries and non responsive answers to plaintiff's questions.

It is now abundantly evident that already went <u>far beyond the limits in perpetrating a fraud on the court and the consumer, announcing its intent to take the PROPERTY at any cost,</u> by having engaged in a prohibited use and misappropriation of property and failure to notice the plaintiff or even respond to his inquiries.. Accordingly, all parties and their agents must be enjoined from taking any action negatively affecting Quinones. Nothing short of a prohibitive injunction will avoid further, substantial and continuing harm to Quinones.

A. <u>Balancing the Hardships</u>

Defendants have shown every indication that they intend to continue inflicting substantial and irreparable harm on plaintiff. The only practical means of avoiding such substantial and irreparable injuries to plaintiff is the issuance of the requested injunctive relief. Further there is no substantial risk to public interest. Plaintiff is threatened with the loss of his home on July 23, 2008. He has justifiably asked for a demonstration of the right to actually legally hold the foreclosure.

By contrast, Defendants will suffer <u>no actual harm</u> or potential harm whatsoever from the issuance of the injunctive relief of stay sought. Due to the current nature of the real estate market no bond should be required.

B. <u>Bond Requirements</u>.

The court has discretion to determine the imposition of bonding requirements if, in the courts discretion such a bond is necessary. Since the underlying issue is a foreclosure of real property, the value of the real property remains even if plaintiff is unsuccessful. In the current real estate market, it is most unlikely that Defendants will be placed in much jeopardy.

The court must take note that Plaintiff has justifiably requested the right for proof that there is a right to actually legally hold the foreclosure. To require a bond in these circumstances would have a chilling effect to penalize the consumer for exercising his protected statutory rights. Accordingly, it is requested that no bond be required.

//

//

## CONCLUSION

For the reasons set forth above, plaintiff respectfully requests that this Court issue an Injunction Order to stay actions against the PROPERTY until further order of the court; grant leave to amend any pleadings to correct any deficiencies, and such other and further relief as the Court deems equitable and proper.

Dated: July 21, 2008         Respectfully submitted,

*Copernico S. Mamerto*
Copernico S. Mamerto
Plaintiff in pro se